**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JOHN A. OLAGUES and RAY WOLLNEY, <br><br> Plaintiffs, <br><br> v. <br><br> ELON MUSK, JEFFREY B. STRAUBEL, ANTONIO J. GRACIAS, AND KIMBAL MUSK, <br><br> Defendants, <br><br> and <br><br> TESLA, INC., a Delaware corporation, <br><br> Nominal Defendant. | Case No. 18-cv-07110-BLF <br><br> **ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; AND DISMISSING ACTION WITH PREJUDICE** <br><br> [Re: ECF 22] |

Plaintiffs John A. Olagues and Ray Wollney bring this action under Section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), seeking disgorgement of alleged short-swing profits realized by certain officers and directors of Tesla, Inc. ("Tesla") in connection with Tesla's acquisition of SolarCity Corporation ("SolarCity"). The action is asserted on behalf of Nominal Defendant Tesla and against Individual Defendants Elon Musk, Tesla's Chief Executive Officer; Jeffrey B. Straubel, Tesla's Chief Technical Officer; Antonio J. Gracias, a member of Tesla's Board of Directors; and Kimbal Musk, a member of Tesla's Board of Directors. The Individual Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

Having considered the briefing and the oral arguments presented at the hearing on July 25, 2019, the Court GRANTS the motion to dismiss WITHOUT LEAVE TO AMEND, and DISMISSES the action WITH PREJUDICE.

I. **BACKGROUND**[1]

Tesla is a Delaware corporation with its headquarters in Palo Alto, California. Compl. ¶ 11. Tesla's common stock is registered with the SEC pursuant to Section 12 of the Exchange Act and it trades on the NASDAQ under the symbol TSLA. Compl. ¶ 12. Tesla's stated mission is "to accelerate the world's transition to sustainable energy." Joint Proxy Statement ("Proxy") at 57, Defs.'s RJN Exh. 1, ECF 23-1. On May 31, 2016, the Tesla Board held a regular meeting at which the possibility of acquiring a solar energy company was discussed. *Id.* at 58. The Board directed special outside counsel to provide legal analysis regarding the potential acquisition and to engage an independent financial advisor to provide financial analysis. *Id.*

On June 20, 2016, the Tesla Board held a special meeting at which it heard presentations by the special outside counsel and the independent financial advisor. Proxy at 59, Defs.'s RJN Exh. 1, ECF 23-1. The Tesla Board approved the making of a non-binding proposal to acquire all of the common stock of SolarCity. *Id.* Individual Defendants Elon Musk and Antonio Gracias recused themselves from the approval process due to their service on the SolarCity Board. *Id.* On June 20, 2016, the Tesla Board provided to SolarCity management a written proposal to acquire all of SolarCity's issued and outstanding shares of common stock, subject to the completion of due diligence, in a stock-for-stock transaction. *Id.* On June 21, 2016, Tesla announced the preliminary proposal to acquire SolarCity. *Id.*; *see also* Compl. ¶ 33.

In July 2016, Tesla and SolarCity reached agreement on the terms of the proposed merger, whereby each share of SolarCity common stock would be automatically exchanged for 0.110 shares of Tesla common stock ("Exchange Ratio"). Proxy at 59, Defs.'s RJN Exh. 1, ECF 23-1.

---

[1] The background facts are drawn from the allegations of the complaint, which are accepted as true for purposes of the motion to dismiss, *see Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011), and from documents incorporated into the complaint by reference and matters subject to judicial notice, *see Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016). The applicability of the incorporation by reference doctrine and the judicial notice rule is discussed at length in section III.A, below.

2

The merger was approved by both the SolarCity Board and the Tesla Board (minus Elon Musk and Antonio Gracias) in late July 2016. *Id.* The Tesla Board's approval was conditioned on the approval of a majority of voting shares not held by any officer or director of SolarCity. Merger Proposal, Defs.' RNJ Exh. 1, ECF 23-1. The proposed merger was structured so that a wholly owned subsidiary of Tesla, D Subsidiary, Inc., would be merged with and into SolarCity, and SolarCity thereafter would exist as a wholly owned subsidiary of Tesla. *Id.* The Merger Agreement was announced on August 1, 2016. Compl. ¶ 35.

The final Proxy was filed with the United States Securities and Exchange Commission ("SEC") on October 12, 2016. Proxy, Defs.' RJN Exh. 1, ECF 23-1. Tesla's shareholders approved the merger on November 17, 2016. Tesla Form 8-K, Defs.' RJN Exh. 4, ECF 23-4; *see also* Compl. ¶ 21. Under the terms of the Merger Agreement, shares of SolarCity common stock were automatically converted into a "right to receive" shares of Tesla common stock pursuant to the Exchange Ratio ("Merger Consideration"). Merger Agreement ¶ 2.01(c), Defs.' RJN Exh. 2, ECF 23-2. Holders of shares in SolarCity thereafter had no rights "except the right to receive the Merger Consideration and any cash in lieu of fractional shares. . . ." *Id.* The merger transaction closed on November 21, 2016. Compl. ¶ 21.

As a result of the merger transaction, Defendant Elon Musk's 21,845,674 shares of SolarCity common stock were exchanged for 2,403,024 shares of Tesla common stock; Defendant Jeffrey Straubel's 758,246 shares of SolarCity common stock were exchanged for 83,407 shares of Tesla common stock; Defendant Antonio Gracias's 197,688 shares of SolarCity common stock were exchanged for 21,745 shares of Tesla common stock; and Defendant Kimbal Musk's 147,101 shares of SolarCity common stock were exchanged for 16,181 shares of Tesla common stock. Form 4s, Defs.' RJN Exh. 3, ECF 23-3.

Plaintiffs John Olagues and Ray Wollney contend that, properly viewed, the Individual Defendants' acquisition of the "right to receive" Tesla stock when the merger closed on November 21, 2016 was a transaction that constituted a "purchase" of Tesla shares. Compl. ¶¶ 14-17, 40-47; Opp. at 2, ECF 29. Plaintiffs allege that each of the Individual Defendants' subsequent sales of the Tesla shares resulted in the realization of short swing profits that are recoverable by Tesla

3

pursuant to Section 16(b) of the Exchange Act. Compl. ¶¶ 14-17, 48-50. On August 29, 2018 and September 10, 2018 – approximately two years after completion of the merger – Plaintiffs sent letters to Tesla requesting that Tesla take steps to recover short swing profits from the Individual Defendants. Compl. ¶ 13; *see also* Letters, Defs.' RJN Exhs. 6-7, ECF 23-6 & 23-7. Plaintiffs' counsel emailed Defendants' counsel proof of Plaintiffs' ownership of Tesla stock, showing that each Plaintiff purchased a single share of Tesla stock on August 15, 2018. Kristy Decl. ¶ 9, ECF 23; Brokerage Records, Defs.' RJN Exh. 8, ECF 23-8. On October 26, 2018, Tesla advised Plaintiffs that the Tesla Board had considered the requests and declined to take steps to recover any short swing profits from the Individual Defendants. Compl. ¶ 13. Plaintiffs sent another letter request to Tesla on November 9, 2018. *Id.* On November 15, 2018, Tesla advised Plaintiffs via telephone conference call that it did not intend to take steps to recover any short swing profits from the Individual Defendants. *Id.*

Plaintiffs filed this lawsuit on November 21, 2018, asserting a single claim for violation of Section 16(b) of the Exchange Act. Plaintiffs seek "recovery to Tesla from Defendants of all profits resulting from their short swing transactions in Tesla equity securities in violation of Section 16(b) of the Securities Exchange Act of 1934 in an amount to be proven at trial"; prejudgment and postjudgment interest on the recovered profits; and attorneys' fees and expenses. Compl. Prayer, ECF 1.

**II. LEGAL STANDARD**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating a Rule 12(b)(6) motion, the district court must consider the allegations of

the complaint, documents incorporated into the complaint by reference, and matters subject to judicial notice. *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**III. DISCUSSION**

**A. Judicial Notice and Incorporation by Reference**

Before turning to the merits of Defendants' motion to dismiss, the Court addresses the parties' requests for judicial notice and incorporation by reference. "Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id*. (quoting Fed. R. Evid. 201(b)(1)-(2)). Thus, the Court "may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Id*. (internal quotation marks and citation omitted).

"Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Id*.

**1. Individual Defendants' Request for Judicial Notice and Incorporation by Reference in Support of Motion to Dismiss (ECF 24)**

The Individual Defendants request that the Court take judicial notice of five documents filed with the SEC, submitted as Exhibits 1-5 to the Declaration of Dean S. Kristy: (1) the Joint Proxy Statement of Tesla and SolarCity filed with the SEC on October 12, 2016; (2) the Merger Agreement filed with the SEC on August 1, 2016; (3) the Individual Defendants' Form 4 filings with the SEC; (4) Tesla's Form 8-K regarding the results of the November 17, 2016 vote of Tesla's shareholders, filed with the SEC on November 18, 2016; and (5) SolarCity's Form 8-K regarding the results of the November 17, 2016 vote of SolarCity's shareholders, filed with the

SEC on November 18, 2016. Defs.' RJN ¶¶ 1-5, ECF 24; Kristy Decl., ECF 23. The Individual Defendants also request that the Court consider a number of documents under the incorporation by reference doctrine, submitted as Exhibits 1-4 and 6-9 to the Declaration of Dean S. Kristy. Exhibits 1-4 are described above. Exhibits 6-9 include: (6) Plaintiffs' August 29, 2018 letters to Tesla, demanding that Tesla seek recovery from Individual Defendants Elon Musk and Jeffrey Straubel under Section 16(b), referred to and relied on at ¶ 13 of the complaint; (7) Plaintiffs' September 10, 2018 letters to Tesla demanding that Tesla seek recovery from Individual Defendants Antonio Gracias and Kimbal Musk under Section 16(b), referred to and relied on at ¶ 13 of the complaint; (8) Tesla stock ownership information for Plaintiffs, which Plaintiffs refer to and rely on at ¶¶ 5-6 of the complaint; and (9) Tesla's October 26, 2018 letter to Plaintiffs' counsel, stating Tesla's reasons for declining to seek recovery from the Individual Defendants under Rule 16(b), referred to an relied on at ¶ 13 of the complaint. Defs.' RJN ¶¶ 6-9, ECF 24; Kristy Decl., ECF 23.

Plaintiffs do not oppose the Individual Defendants' request for judicial notice and incorporation by reference. *See* Pls.' RJN at 1, ECF 30. With respect to the SEC filings, Exhibits 1-5 to the Kristy Declaration, judicial notice is sought for the purpose of informing the Court of the chronology of events leading up to and resulting in completion of the merger. Those events are undisputed and can be accurately and readily determined from the publicly filed SEC documents. Accordingly, judicial notice is appropriate. The parties' correspondence regarding Section 16(b) and documentation regarding Plaintiffs' ownership of Tesla stock, Exhibits 6-9 to the Kristy Declaration, may be considered under the incorporation by reference doctrine, as Plaintiffs rely on those documents in the complaint.

The Individual Defendants' request for judicial notice and incorporation by reference (ECF 24) is GRANTED.

### 2. Plaintiffs' Request for Judicial Notice in Opposition to Defendants' Motion (ECF 30)

Plaintiffs request that the Court take judicial notice of documents submitted as Exhibits A-D to the Declaration of Robert Green: (A) SEC filings of Tesla and SolarCity; (B) an *amicus* brief

filed before the Ninth Circuit in the case *Dreiling v. American Express Travel Related Servs. Co., Inc.*, No. 04-35715; (C) a letter dated October 29, 2014 from the law firm Wilson Sonsini to Mr. Olagues; and (D) an *amicus* brief filed before the Second Circuit in the case *Gryl v. Shire Pharm. Grp. PLC*, No. 01-9139. Pls.' RNJ, ECF 30; Green Decl., ECF 29-1.

The Individual Defendants do not oppose Plaintiffs' request for judicial notice as to Exhibits A, B, and D of the Green Declaration. *See* Defs.' Opp. to Pls.' RJN and Suppl. RJN, ECF 34. Judicial notice is appropriate with respect to those documents, as they are public filings. The Individual Defendants object to Plaintiffs' request for judicial notice as to Exhibit C, a letter dated October 29, 2014 from the law firm Wilson Sonsini to Mr. Olagues. The letter informs Mr. Olagues that an individual named Mr. Icahn remitted $185,384.76 to a company called Nuance Communications, Inc. The referenced transaction does not appear factually related to the present case, and it is not apparent how the contents of the letter could be accurately and readily determined. Accordingly, Plaintiffs' request for judicial notice (ECF 30) is GRANTED IN PART as to Exhibits A, B, and D, and DENIED as to Exhibit C.

### 3. Individual Defendants' Supplemental Request for Judicial Notice (ECF 34)

Finally, the Individual Defendants request that the Court take judicial notice of docket sheets in derivative and Section 16(b) actions filed in the Northern District of California, the Central District of California, and the Southern District of New York, submitted as Exhibits 1-6 to the Supplemental Declaration of Dean S. Kristy. Defs.' Opp. to Pls.' RJN and Suppl. RJN, ECF 34. Judicial notice of the court filings is appropriate. The Individual Defendants' Supplemental Request for Judicial Notice (ECF 34) is GRANTED.

### B. Analysis

Turning to the merits of the Individual Defendants' motion, the Court first discusses the scope of Section 16(b) and Rule 16b-3(d) promulgated thereunder. Next, the Court addresses the parties' competing arguments regarding the applicability of Section 16(b) and Rule 16b-3(d) to the facts of this case. Finally, the Court discusses whether leave to amend is appropriate in this case.

### 1. Section 16(b) and Rule 16b-3(d)

"Section 16(b) of the Exchange Act bars corporate insiders, such as directors, from profiting on short-swing trades, defined as the purchase and sale of stock within a six-month period." *Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 945 (9th Cir. 2006) (citing 15 U.S.C. § 78p(b)). "The general purpose of Congress in enacting § 16(b) is well known." *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 243 (1976). "Congress recognized that insiders may have access to information about their corporations not available to the rest of the investing public," and it "sought to curb the evils of insider trading by taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great." *Id*. (internal quotation marks, citation, and alterations omitted). Congress created "a strict liability rule that requires the statutorily defined inside, short-swing trader to disgorge all profits realized on all purchases and sales within the specified time period, without proof of actual abuse of insider information, and without proof of intent to profit on the basis of such information." *Roth v. Reyes*, 567 F.3d 1077, 1079 (9th Cir. 2009) (internal quotation marks and citation omitted). "An action under § 16(b) to recoup short-swing trading profits may be brought by the issuer whose stock was traded or by a stockholder 'in behalf of the issuer.'" *Roth*, 567 F.3d at 1079 (quoting 15 U.S.C. § 78p(b)). Any such "profits 'shall inure to and be recoverable by the issuer.'" *Foremost-McKesson*, 423 U.S. at 244 (quoting 15 U.S.C. § 78p(b)).

"Section 16(b) also contains certain express limitations." *Roth*, 567 F.3d at 1080. Importantly for purposes of the present motion, "§ 16(b) shall not be construed to cover any transaction or transactions which the Securities and Exchange Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." *Id*. (internal quotation marks, citations, and alterations omitted). Pursuant to that authority, the SEC has promulgated Rule 16b-3(d), which "exempts an insider from § 16(b) liability when the transaction takes place with the issuer and is specifically approved by the issuer's board of directors or majority of shareholders." *Dreiling*, 458 F.3d at 945 (citing 17 C.F.R. § 240.16b-3(d)). The SEC exempted the transactions defined in Rule 16b-3(d) "because they do not appear to present the same opportunities for insider profit on the basis of non-public information as do market

8

1  transactions by officers and directors, and where the issuer, rather than trading markets, is on the

2  other side of an officer or director's transaction in the issuer's equity securities, any profit obtained

3  is not at the expense of uninformed shareholders and other market participants of the type

4  contemplated by the statute." *Id*. at 948 (internal quotation marks and citations omitted).

### 2. Application of Section 16(b) and Rule 16b-3(d) in this Case

The Individual Defendants contend that a Section 16(b) claim cannot be stated on the facts of this case, because as a matter of law the Individual Defendants' acquisition of Tesla shares pursuant to the merger constitutes an exempt transaction under Rule 16b-3(d), such that profits realized from later sale of the Tesla shares fall outside of Section 16(b). Under the authorities discussed above, the Individual Defendants may establish applicability of the Rule 16b-3(d) exemption if they show that each Individual Defendant's acquisition of Tesla shares pursuant to the merger was (a) a transaction between the Individual Defendant and the issuer, Tesla; and (b) approved by Tesla's Board or a majority of Tesla's shareholders. The Individual Defendants contend that both those requirements are met in this case.

In response, Plaintiffs argue that Rule 16b-3(d) does not apply for two reasons. First, Plaintiffs assert that "Defendant insiders' acquisitions of Tesla shares, pursuant to an alleged 'Reverse Subsidiary Merger,' was not a transaction between the insiders and the issuer." Pls.' Opp. at 1, ECF 29. Second, Plaintiffs assert that "there was no corporate approval as required for exemption under Rule 16b-3." *Id*.

#### a. Each Individual Defendant's Transaction was with the Issuer

The Individual Defendants point to the plain language of the Merger Agreement, requiring the mandatory exchange of all SolarCity shares for Tesla shares. Merger Agreement § 2.01(c). Under the Merger Agreement, all shares of SolarCity common stock were automatically converted into a "right to receive" shares of Tesla common stock pursuant to the agreed-upon Exchange Ratio ("Merger Consideration"); and the holders of SolarCity shares had *no rights* with respect to such shares *other* than the right to receive the Merger Consideration and any cash in lieu of fractional shares. *Id*. The Merger Consideration was provided by the issuer, Tesla, through an "Exchange Agent." Merger Agreement § 2.02(a). Specifically, Tesla deposited with the

9

Exchange Agent certificates representing the shares of Tesla common stock to be issued as Merger Consideration, as well as cash sufficient to make payments in lieu of fractional shares. *Id*. Based on that language, each Individual Defendants' acquisition of Tesla shares appears to be a transaction with Tesla.

Plaintiffs make two arguments in support of their position that the relevant transaction was not with Tesla. First, Plaintiffs argue that the stock-for-stock exchange should be broken down into component parts, including a first transaction in which each Individual Defendant acquired a "right to receive" Tesla shares. According to Plaintiffs, the acquisition of the "right to receive" was a purchase, and was a transaction between each Individual Defendant and SolarCity (not Tesla). Alternatively, Plaintiffs assert that the Individual Defendants characterize the transaction as being with Tesla's wholly owned subsidiary, D Subsidiary, Inc., and that even if that characterization is accepted, the transaction with Tesla's subsidiary does not qualify as a transaction with Tesla. Either way, Plaintiffs argue, Rule 16b-3(d) does not apply because the transaction was not between the Individual Defendant and the issuer, Tesla. Plaintiffs' arguments are unsupported by fact or law.

### i. The Stock-for-Stock Exchange was a Single Transaction

Plaintiffs' request that the Court break down the stock-for-stock exchange into component parts is at odds with the nature of the transaction as described in the Merger Agreement. The Merger Agreement clearly contemplated a single transaction, whereby SolarCity shares were exchanged for Tesla shares pursuant to the agreed Exchange Ratio. Indeed, Plaintiffs do not explain how the conversion of SolarCity shares into a "right to receive" Tesla shares can be viewed as a separate transaction when the "right to receive" could not be used for any purpose other than to receive the appropriate number of Tesla shares under the Exchange Ratio. The Merger Agreement itself indicated that it was intended to come within the Rule 16b-3(d) exemption. *See* Merger Agreement § 6.08.

In *Icahn*, cited by the Individual Defendants, the District Court for the Southern District of New York soundly rejected Mr. Olagues's similar attempt to recast a single transaction through "fragmentation of Defendants' transaction into two hypothetical separate transactions, and the

10

subsequent revaluation of those component parts." *Olagues v. Icahn*, No. 1:15-CV-0898-GHW, 2016 WL 1178777, at *11 (S.D.N.Y. Mar. 23, 2016), aff'd, 866 F.3d 70 (2d Cir. 2017). This Court finds the reasoning set forth in *Icahn* to be persuasive, and follows it here.

Plaintiffs suggest that *Icahn* provides no support for the Individual Defendants' position because "the defendant in that matter, Icahn, sent a letter through counsel to Mr. Olagues acknowledging the Section 16(b) violations raised by Olagues and disgorged profits to three issuer companies as recovery for these violations." Pls.' Opp. at 10, ECF 29. For the reasons set forth in Section III.A., above, this Court declines to take judicial notice of the letter in question. Moreover, as the Individual Defendants point out, the letter was *not* sent by Mr. Icahn but by counsel for Nuance Communications, Inc. *See* Green Decl. Exh. C, ECF 29-1. Finally, the fact that the defendants in *Icahn* acknowledged liability under Section 16(b) is beside the point. The *Icahn* decision makes clear that the defendants had conceded liability and had transmitted short-swing profits to the issuer companies. *See Icahn*, 2016 WL 1178777, at *3 & n.4. However, Mr. Olagues was seeking disgorgement of *additional* alleged short-swing profits based on what the district court characterized as his "strained attempt to carve up a single transaction by calling it something which it is not." *Id*. at *1 (internal quotation marks, citation, and alteration omitted). The *Icahn* court rejected Mr. Olagues' attempt to carve up a single transaction, and this Court does the same here.

The Individual Defendants also cite an SEC No-Action Letter indicating that "[t]he acquisition of acquiror equity securities (including acquiror derivative securities) by officers and directors of the acquiror through the conversion of target equity securities in connection with a merger constitutes an acquisition from the acquiror issuer eligible for exemption under Rule 16b-3(d)." SEC No-Action Letter to Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden No-Action Letter"), 1999 WL 11540, at *1 (Jan. 12, 1999). The Individual Defendants also cite a leading treatise on Section 16(b), which cites the Skadden No-Action Letter in opining that conversion of an insider's target securities into acquiror securities pursuant to a merger qualifies for exemption under Rule 16b-3(d). *See* Peter J. Romeo & Alan Dye, Section 16(b) Treatise and Reporting Guide § 1404 (4th ed. 2012).

11

Plaintiffs argue that the Court should disregard the Skadden No Action Letter and the treatise discussing it, relying on *Gryl ex rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*, 298 F.3d 136, 145 (2d Cir. 2002). In *Gryl*, the Second Circuit held that "SEC no-action letters constitute neither agency rule-making nor adjudication and thus are entitled to no deference beyond whatever persuasive value they might have." *Id*. The Second Circuit went on to conclude that the same Skadden No-Action Letter cited here was not persuasive for reasons unrelated to the issues before this Court. *Id*. In the present case, this Court finds the Skadden No-Action Letter and the treatise to be persuasive with respect to the scope of Rule 16b-3(d). Even if the Skadden No-Action Letter and treatise were disregarded, however, the Court would not accept Plaintiffs' invitation to deconstruct the stock-for-stock transaction in this case. Plaintiffs have not cited, and the Court has not discovered, a single case in which a court treated a stock-for-stock merger transaction in the way that Plaintiffs request here.

### ii. Role of D Subsidiary, Inc.

Plaintiffs argue that the Individual Defendants claim the transaction was with Tesla's wholly owned subsidiary, D Subsidiary, Inc., and that even if that characterization is accepted, the transaction was not with Tesla itself as required for application of Rule 16b-3(d). Plaintiffs' argument is unpersuasive because the Individual Defendants do *not* contend that the transaction was with D Subsidiary, Inc. They contend it was with Tesla, and for the reasons discussed above, that position is supported by the language of the Merger Agreement. *See* Merger Agreement § 2.02(a).

Plaintiffs' argument also is unpersuasive in light of an SEC No-Action Letter to the American Bar Association cited by the Individual Defendants, defining "issuer" to include majority-owned subsidiaries for purposes of Rule 16b-3(d). *See* SEC No-Action Letter to the American Bar Association ("ABA No-Action Letter"), 1999 WL 61837, at *1 (Feb. 10, 1999). While not controlling for the reasons discussed above, the Court finds the ABA No-Action Letter to be persuasive.

In conclusion, it appears clear from the face of the complaint, documents incorporated into the complaint by reference, and matters judicially noticeable that each Individual Defendant's

12

acquisition of Tesla stock pursuant to the merger was a transaction with the issuer, Tesla, as required for application of Rule 16b-3(d).

### b. The Transactions had Corporate Approval

As discussed above, Rule 16b-3(d) applies to transactions with the issuer that are approved by the issuer's board *or* a majority of shareholders. *See Dreiling*, 458 F.3d at 945. Plaintiffs do not deny that the merger was approved by *both* the Tesla Board and a majority of Tesla shareholders. Instead, Plaintiffs argue that the Board and shareholder approvals are invalid.

With respect to the shareholders' approval, Plaintiffs point out that under Rule 16b-3(d), shareholder approval must be "in compliance with Section 14 of the Act." 17 C.F.R. § 240.16b-3(d)(2). Section 14 of the Exchange Act governs the use of proxies. *See* 15 U.S.C. § 78n. Plaintiffs argue that the Tesla shareholders' approval was obtained in violation of Section 14 and therefore is not valid. The Court need not reach this argument, because Rule 16b-3(d) contains no requirement that Board approval be in compliance with Section 14. *See* 17 C.F.R. § 240.16b-3(d)(1). Other courts in this district have held that, where it is clear that the issuer's Board approved the transaction, the court should not look beyond that approval when determining the applicability of Rule 16b-3(d). *See, e.g., Segen v. Rickey*, No. C07-02917 MJJ, 2008 WL 590505, at *6 (N.D. Cal. Feb. 29, 2008); *Roth v. Reyes*, No. C 06-02786 CRB, 2007 WL 2470122, at *5 (N.D. Cal. Aug. 27, 2007), aff'd, 567 F.3d 1077 (9th Cir. 2009).

Plaintiffs suggest that the district court's opinion in *Roth* should be disregarded because it was affirmed by the Ninth Circuit on grounds unrelated to the validity of the Board's approval. It is true that the Ninth Circuit's decision was based on statute of limitations grounds and did not address the district court's determination that the fact of Board approval is sufficient for purposes of Rule 16b-3(d). *See Roth*, 567 F.3d at 1081-82 ("We do not reach this issue, however, nor do we decide whether Roth's complaint adequately alleged the inapplicability of Rule 16b-3(d), because we hold that Roth's suit is time-barred."). Nothing in the Ninth Circuit's opinion undermines the district court's reasoning regarding the effect of Board approval.

It therefore appears from the face of the complaint, documents incorporated into the compliant by reference, and matters judicially noticeable that the Board in fact approved the

13

1 merger. Because Plaintiffs' complaint and the record which may be considered by the Court on
Plaintiffs' Rule 12(b)(6) motion show that both requirements for application of Rule 16b-3(d) are
met – the transaction was with the issuer, Tesla, and was approved by the Board – the motion to
dismiss Plaintiffs' Section 16(b) claim is GRANTED.

### 3. Leave to Amend

Having determined that the complaint is subject to dismissal, the Court must decide whether leave to amend is warranted. Leave ordinarily must be granted unless one or more of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors). The Court finds no undue delay (factor 1) or bad faith (factor 2). The motion to dismiss addresses the original complaint, so there have been no prior opportunities or failures to cure pleading deficiencies (factor 3). Under these circumstances, the Court ordinarily would grant leave to amend. However, based on the allegations of the complaint and the current record, it is clear that the deficiencies identified in this order could not be cured by amendment (factor 5). Granting leave to amend therefore would impose undue prejudice on the Individual Defendants (factor 4), because requiring them to expend resources on bringing another motion to dismiss a futile claim would serve no purpose.

Accordingly, the motion to dismiss will be granted WITHOUT LEAVE TO AMEND.

### 4. Asserted Conflict in Representation

Finally, the Court addresses Plaintiffs' contention that "there is a glaring conflict in the representation of nominal Defendant Tesla by the same attorneys representing the Defendant insiders in this case." Pls.' Opp. at 1, ECF 29. The case upon which Plaintiffs rely, *Weisman v. Spector*, 158 F. Supp. 789 (S.D.N.Y. 1958), is factually distinguishable. In *Weisman*, the Rule 16(b) claim was beyond the motion to dismiss stage, and the district court was addressing a motion for summary judgment brought by the nominal defendant corporation. *Id*. at 791. The court observed that the corporation and the insider were represented by the same counsel, and

14

opined that there was an apparent conflict "which should raise a question in the mind of counsel for the defendants as to whether he should represent parties with apparently divergent interests." *Id*. The *Weisman* court did not make any ruling with respect to the conflict, beyond advising counsel to consider whether he should continue to represent both the nominal defendant and the real defendant. *Id*.

In the present case, the Rule 16(b) claim is legally deficient on its face, and amendment would be futile. Consequently, while this Court might raise the issue of potential conflict were the case to move forward, the Court perceives no bar to the joint representation on these facts.

## IV. ORDER

(1) The Individual Defendants' requests for judicial notice and incorporation by reference (ECF 24 and 34) are GRANTED;

(2) Plaintiffs' request for judicial notice (ECF 30) is GRANTED IN PART as to Exhibits A, B, and D, and DENIED as to Exhibit C;

(3) The Individual Defendants' motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND;

(4) The action is DISMISSED WITH PREJUDICE; and

(5) The Clerk is directed to close the file.

Dated: July 31, 2019

BETH LABSON FREEMAN
United States District Judge